IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELITE EQUIPMENT, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 05-G-1458-E |
| ) | |
| RICHARD ALAN CORNUTT, ) | |
| ) | |
| Appellee. ) | |

MEMORANDUM OPINION

This cause is before the court on appeal from an order by the Bankruptcy Court for the Northern District of Alabama entering judgement in favor of the Appellee/Debtor and against the Appellant on its complaint in Adversary Proceeding 04-40414. The court has jurisdiction pursuant to 28 U.S.C. §§ 158 and 1334.

STANDARD OF REVIEW

"In reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions de novo. The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses." In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).

DISCUSSION

This is an appeal by Elite Equipment, Inc. ("Elite"), from a judgment in favor of Richard Alan Cornutt ("Cornutt") in an adversary proceeding filed by Elite. In

it's complaint in the adversary proceeding Elite objected to the discharge of certain of Cornutt's debts under 11 U.S.C. § 523(a)(2),(4), and (6).[1]  As part of its complaint, Elite also filed an objection to discharge under 11 U.S.C. §§ 727(a)(2), (3), (4), (5), and (6).[2]

---

[1] 11 U.S.C. § 523 provides in part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

* * * *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

* * * *

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

* * * *

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

[2]  11 U.S.C. § 727(a)  provides in part:

(a) The court shall grant the debtor a discharge, unless--

* * * *

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case--

Cornutt was the sole shareholder of ProDesign Systems, Inc. ("ProDesign"). ProDesign was engaged in the business of designing and manufacturing electrical control systems. ProDesign and Elite entered into an agreement in 2001 under which ProDesign was to design and manufacture an electrical control system for a project Elite was working on for Caterpillar. Elite agreed to pay ProDesign $359,820.00 to complete the project, including $189,138.00 for equipment and $111,425.00 for electrical installation. (R #5, Agreed Facts #6 (hereinafter "Agreed Facts").) The terms of payment provided 20% to be paid upon receipt of the purchase order; 10% upon delivery of engineering;

---

    (A) made a false oath or account;

    (B) presented or used a false claim;

    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case--

    (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

    (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

    (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify.

30% due midway of fabrication; 20% due on completion of fabrication; 10% due upon scheduled delivery of equipment; and 10% due upon sign-off.  (Agreed Facts # 6.)  On September 9, 2001, Elite paid an invoice submitted by ProDesign in the amount of $70,164.00, which represented 20% of the contract price.  (Agreed Facts #19, #20.)  At trial, Danny Williams, president of Elite, testified that he met with Cornutt when he came to pick up this check.  (Tr. at 22.)  He testified that Cornutt represented at that time that ProDesign had bought "all of the major components for them to get started on the panel."  (Tr. at 23.)  Williams testified that the project included four panels which would house electrical and computer equipment, and that Cornutt represented that all of the panels were on order.  (Tr. 23.)

In January 2002 ProDesign invoiced the plaintiff for $140,328.00.  (Agreed Facts #23.)  Elite paid ProDesign $80,000.00 on or about January 30, 2002, and $60,328.00 on or about February 20, 2002.  (Agreed Facts # 7.)  At trial, Williams testified that at this time, Cornutt told him that "they were almost done with the panels."  (Tr. 26.)

It is Elite's position that Cornutt knew these and other representations were false at the time he made them.  At trial, Williams testified that at the time progress on the project was stopped, less than half of the necessary parts (based upon their cost) had been procured.  (Tr. 34.)  This was based on his inspection of the parts after they had been moved from ProDesign's place of business.  Williams testified that when he inspected the

parts, they were being stored outside at another construction company. (Tr. 33.) He testified that of the four panels needed, he saw only three. (Tr. 34.)

Elite asserts that Cornutt had committed actual fraud by making the above representations, while knowing them to be false. (Tr. 120.) It argues Cornutt's actions render its claim against him nondischargeable under 11 U.S.C. § 523(a). The bankruptcy judge, The Honorable James S. Sledge, found the facts to be those in the agreed facts presented to the court. The court did not attempt to resolve any conflicts in the testimony. Instead, the court concluded that all claims under § 523(a) required a piercing of the corporate veil:

> On the claims under 523, the court finds that all of those claims may or may not be legitimate claims if they were asserted against ProDesign but do not rise to any claims against the defendant. The dispute over whether there were misrepresentations would be misrepresentations made by ProDesign and not by the defendant, and the actions in the contract with [Elite] were all actions between the plaintiff and ProDesign.

(Tr. 126.) The bankruptcy court found the evidence did not support a piercing of the corporate veil, and, therefore, found against Elite on it's claim of nondischargabilty under § 523(a).

The bankruptcy court did not apply the proper legal standard to Elite's claim under § 523(a). Elite was clearly asserting fraud claims against Cornutt individually and presented evidence in support of those claims. The bankruptcy court's legal conclusion (requiring Elite to pierce the corporate veil in order to hold Cornutt individually liable for fraud) is a gross misapplication of the general common law of

5

fraud, which is the appropriate standard when considering whether the actions of a debtor rise to the level of fraud sufficient to prevent dischargeability under § 523(a)(2)(A).  <u>Field v. Mans</u>, 116 S. Ct. 437, 443, n. 9 (1995)("We construe the terms in § 523(a)(2)(A) to incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State.")

      In Alabama the law is well settled:  "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."  <u>Ex Parte Charles Bell Pontiac-Buick</u>, 496 So. 2d 774, 775 (Ala. 1986).  The Alabama rule also represents the general common law on this issue.  <u>See</u> <u>e.g.</u>, <u>A&M Records, Inc. v. M.V.C. Dist. Corp.</u>, 574 F.2d 312, 315 (6th Cir. 1978)("It is well established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation.")(citing 3A Fletcher, <u>Cyclopedia of the Law of Private Corporations</u> § 1135, at 202.203 (1975)); <u>Katara v. D.E. Jones Commodities, Inc.</u>, 835 F.2d 966, 972 (2nd Cir. 1987)(citing <u>Restatement (Second) of Agency</u> § 343 (1958).

      The <u>Restatement (Second) of Agency</u> states the general rule as follows: "An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal...." § 343 (1958). <u>Fletcher</u> states the rule as follows:

> A corporate officer or agent who commits fraud is personally liable to a person injured by the fraud.  An officer actively participating in the

> fraud cannot escape personal liability on the ground that the officer was acting for the corporation. Similarly, it is immaterial that the officer received no benefits from the transaction. The corporation also may be liable, but the individual is not thereby relieved of his or her own responsibility.

3A Fletcher, Cyclopedia of the Law of Private Corporations § 1143 (footnotes omitted)(accessed via Westlaw; current through September 2006 update).

The Appellee has cited no authority for the proposition that a corporate officer may not be held personally liable for fraud committed by him while acting on behalf of the corporation absent a piercing of the corporate veil. All of the cases cited by Appellee involve situations where there has been no showing of fraud by the corporate officer individually. Appellee cites In re Silicon Breast Implants Prod. Liability Litigation, 837 F. Supp. 1128, 1333 (N.D. Ala. 1993) for the proposition that "limited liability for corporations against creditors is fundamental," and that the corporate veil should only be pierced "in exceptional circumstances." (Appellee's Br. at 3.) However, that opinion did not involve the question of whether corporate officials or employees could be held directly liable for their tortious actions on behalf of the corporation. Further legal research by Appellee would have shown that Chief Judge Pointer later vacated in part his 1993 order. In In re Silicone Gel Prod. Liability Litigation, 887 F. Supp 1455 (N.D. Ala. 1995), Judge Pointer held that the plaintiffs could assert claims against Dow Chemical, a shareholder of Dow Corning, based upon Dow' independent tortious actions. Id. at 1459.

The legal standard applied by the bankruptcy court to Appellant's claims under § 523(a) has no support in the law and is contrary to the very foundations of the law of torts and common sense.[3] Therefore, the bankruptcy court applied an improper legal standard in its assessment of Elite's claim against Cornutt under § 523(a).

A bankruptcy court's findings of facts made under a misapplication of the law are not entitled to deference. In re Mercer, 246 F.3d 391, 402 (5th Cir. 2001)("[T]he clear error standard does not apply to findings of fact resulting from application of an incorrect legal standard."); Theriault v. Silber, 547 F.2d 1279, 1280 (5th Cir. 1977)("[W]hen an improper legal standard...is utilized by a District Court in arriving at its findings, the clearly erroneous rule is no impediment to review.")[4]; Sohyde Drilling & Marine v. Coastal States Gas Prod., 644 F.2d 1132, 1138 (5th Cir. May 14, 1981)("Findings which are made under erroneous legal principals cannot be credited."). Therefore, the bankruptcy court's findings of fact in the present case are entitled to no deference and cannot be credited. This is obviously the case as to the Appellant's claims under § 523(a) because the findings were clearly driven by the application of an improper legal standard. The action will be remanded in order to allow the bankruptcy court to make additional or revised factual findings and for application of the proper legal standards to those facts.

---

[3] For example, would the bankruptcy judge require a piercing of the corporate veil in order to hold a debtor liable for assault and battery if it were found he was acting on behalf of the corporation?

[4] In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The bankruptcy court's factual findings are also tainted as they relate to Appellant's claims under § 727 regarding omissions in the debtor's schedules. The bankruptcy court found Cornutt's omissions were not fraudulent. (Tr. 127) Had the court properly considered Elite's claims that Cornutt individually committed fraud under § 523(a), it is possible that it would have reached a different conclusion on Elite's claims under § 727. On remand, the court may wish to reconsider its holdings on Elite's § 727 claims in light of additional or revised factual findings. Therefore, the consideration of the correctness of the bankruptcy court's holdings as to those claims is premature. On remand, the bankruptcy court is free to reconsider its holdings on Elite's claims under § 727 as it deems proper.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 19 March 2007.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.